## COOPER v. COMMONWEALTH.

Court of Appeals of Kentucky.
May 18, 1951.

C. Ewbank Tucker, Louisville, for appellant.

A. E. Funk, Atty. Gen., John B. Browning, Asst. Atty. Gen., for appellee.

CULLEN, Commissioner.

Thomas Cooper shot and killed his brother Ernest with a .22 rifle. He was indicted for murder, convicted of voluntary manslaughter, and sentenced to 21 years in the penitentiary.

He appeals, claiming two grounds of error. The first ground is that the verdict was flagrantly against the evidence, on the theory that the evidence established that he shot in self-defense.

The shooting took place in the family dwelling in Louisville, in the second room from the front of the house, which is referred to as the bedroom. This room had an outside door, opening onto a walkway which ran along the side of the house to the front sidewalk.

The evidence is that the deceased, Ernest, got into an argument with his mother about her giving him some money; that the defendant, Thomas, became involved in the argument in some way; that Thomas shot at Ernest twice while Ernest was near or in the doorway leading to the walkway; that one of the bullets hit a fence outside the door, and the other hit Ernest in the right arm, passing through into the right chest and lung and into the large artery by the heart; that Ernest ran out of the house and along the walkway to the sidewalk in front of the house, and then ran along the sidewalk and fell on the sidewalk around the corner on the next street.

The defendant's claim of self-defense is based on the theory that Ernest had a knife in his hand and was approaching the defendant with the knife when defendant shot him. This is attempted to be buttressed by testimony that Ernest had been drinking; that he was mean when he was drinking; that his reputation as to conduct and behavior was bad; and that in the course of the argument he had threatened to "mess up" everybody in the house.

The only positive testimony that Ernest had a knife in his hands at the moment of the shooting, and was approaching the defendant, was that of the defendant himself. This testimony conflicted with a written statement made by the defendant to the police about two hours after the shooting, and which was read on cross-examination of the defendant. In the statement, the defendant said: "When I shot Ernest, I did no see any weapon in his hands." The mother did not see a knife, and testified she was not in the room when the shooting occurred. A brother-in-law, who was in an upstairs room when the argument started, testified that he came downstairs when he

heard the argument; that he found Thomas with the rifle in his hand in the room behind the bedroom, and that Ernest was in the bedroom; that he (the brother-in-law) tried to take the rifle away from Thomas and then the mother came into the room; the brother-in-law left Thomas and went to the mother and at that time the shots were fired. He did not see a knife in the possession of Ernest. The brother-in-law was not sure whether Thomas was in the bedroom when the shots were fired, but he testified that Thomas and Ernest were not close to each other when the shots were fired.

The police officers who investigated the shooting did not find any knife on the floor of the house, or along the walkway where Ernest ran. In the hospital where Ernest was taken, a nurse and one of the police officers found a knife in the "right front pocket" of Ernest's clothing.

The appellant places considerable reliance upon the testimony given by his father on cross-examination. The father, testifying for the Commonwealth on direct examination, stated that he was in the front room when Ernest went into the kitchen and started an argument with his mother over money. He next heard Thomas and Ernest arguing in the bedroom, and he went back there. When he walked into the room, Ernest was standing by the outside door, and Thomas said "Ernest, go on out the door." The father then told Ernest to go out, that "I ain't going to have no arguments now." He then saw Thomas with the gun in his hand and the father pulled the door open and told Ernest to "go right on out," and then Thomas shot. The first shot was fired while Ernest was in the doorway, with the father trying to push him out. When the second shot was fired, Ernest was "clean out of the door."

On cross-examination, the father gave affirmative answers to questions as to whether Ernest had exhibited a knife and threatened to "mess up" the house if he did not get some money, and as to whether Thomas had "begged" Ernest to "go away and to put up that knife and leave the house." The father then was asked, "I will ask you further to tell this jury wheth-

er or not this boy shot at him at the time that he was headed towards his room?" His answer was, "Yes, sir; he was." On redirect examination, the father was asked the following questions and gave the following answers:

"Q. He was going out the door, was he not? A. Yes, sir; he was going out the door.

"Q. The door leads out into the passageway? A. Yes, sir.

"Q. On into the street, where you go into the street? A. Yes, sir.

"Q. Then, he was not going into this room, because he was leaving the house? A. He was going out this door—why, then, he was out on the street—it was not the street, it was just a walkway outside the house.

"Q. That was where he was shot, was it not? A. Yes, sir."

█ From the foregoing summary of the evidence, it is obvious there was ample evidence to sustain the verdict.

The second ground of error relied upon by the appellant is alleged misconduct by the Commonwealth's Attorney in his argument to the jury. The defendant is a Negro. The claim is made that the Commonwealth's Attorney, in his argument to the jury, stated that in 1949, of the 55 homicides in Jefferson County, 51 were committed by Negroes against Negroes, whereas, the fact was that only 18 had been committed by Negroes against Negroes.

█ The argument of the Commonwealth's Attorney is not set forth in the bill of exceptions, and appears only in the motion for a new trial and in the brief. We have held many times that improper argument to the jury cannot be considered on appeal when the argument is not authenticated in the bill of exceptions. One of the most recent cases so holding is Bowles v. Com., 310 Ky. 591, 221 S.W.2d 459.

█ It is true that the record contains an affidavit by the Commonwealth's Attorney, made after the trial and before the court overruled the defendant's motion for

964

a new trial, which affidavit recites that during his argument the Commonwealth's Attorney erroneously cited certain statistics relative to the number of homicides committed in Jefferson County during 1949, and erroneously cited figures showing a larger number of homicides by Negro residents than by white residents; that during the argument counsel for the defendant called to the attention of the Commonwealth's Attorney that the figures cited were in error and that the Commonwealth's Attorney then immediately corrected his error. Since this affidavit is the only thing in the record upon which the appellant may rely to support his claim of error, and since the affidavit states only that the Commonwealth's Attorney cited erroneous statistics which he immediately corrected upon the error being called to his attention, we are of the opinion that the appellant has failed to establish any prejudicial error arising from the argument of the Commonwealth's Attorney.

The judgment is affirmed.